[No. 45912.   En Banc.   May 31, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. BENJAMIN A. REED, *Appellant.*

*Dire & Odell,* by *Timothy Odell,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *John M. Hancock, Deputy,* for respondent.

HOROWITZ, J.—This case turns on the question whether an emergency order of the Director of Fisheries, closing certain areas to sport and commercial coho salmon fishing in order to protect the native run of coho salmon, was validly applied to appellant. We find that it was and affirm appellant's conviction for violation of the regulation under RCW 75.08.260.

Appellant Benjamin Reed is a member of the Quinault Indian Tribe. His wife is a member of the Puyallup Indian Tribe and has tribal fishing rights. On September 30, 1975, appellant fished for salmon with gill–net gear in an area which was opened by Puyallup tribal regulations as usual and accustomed fishing grounds of the tribe. This same area was temporarily closed, however, by emergency order No. 1283 of the State Director of Fisheries. The order was lawfully promulgated September 15, 1975, in accordance with all requirements of the administrative procedures act, RCW 34.04. It was published in a newspaper of general circulation, the Daily Olympian, and copies were sent to numerous affected parties, including the tribal representatives and attorneys of the Puyallup Tribe. The regulation was also filed with the United States District Court in compliance with the injunction issued by District Judge George Boldt in *United States v. Washington,* 384 F. Supp. 312, 417 (W.D. Wash. 1974). Following a hearing, the regulation was approved in substance by that court.

Appellant Reed was prosecuted in Kitsap County District Court for unlawful commercial gill–net fishing for salmon and was found guilty. He now appeals. He concedes the State of Washington has the authority to close even usual

and accustomed tribal fishing areas for conservation purposes. He contends, however, that the State failed to prove the regulation was valid and that in fact the regulation exceeded the authority of the Department of Fisheries. Moreover, he claims that he was validly assisting his wife, a Puyallup Indian, in the exercise of her right to fish in the usual and accustomed fishing grounds of the Puyallup Tribe.

Our disposition of this appeal rests solely on the ground that the regulation in question was valid and the State met its burden of proof in this regard at trial. A regulation which is validly promulgated and necessary for conservation purposes may be applied in a nondiscriminatory manner to restrict both treaty and nontreaty fishing. *Puyallup Tribe, Inc. v. Department of Game,* 433 U.S. 165, 171, 53 L. Ed. 2d 667, 97 S. Ct. 2616 (1977) (*Puyallup* III); *Puyallup Tribe v. Department of Game,* 391 U.S. 392, 20 L. Ed. 2d 689, 88 S. Ct. 1725 (1968) (*Puyallup* I). If the regulation in question here was shown to be valid, the fact that appellant was allegedly exercising treaty fishing rights is irrelevant. Since we hold the regulation was shown to be valid, we do not reach the other questions raised, that is, whether appellant could assist his wife in the exercise of her fishing rights when she was not present, and what burden of proof must be met to establish as an affirmative defense that a treaty fisherman was fishing in a usual and accustomed tribal fishing ground.

Appellant attacks the validity ab initio of the regulation promulgated by emergency order No. 1283 on the ground it exceeds the authority of the Department of Fisheries. He points to the preamble portion of the order, which states that adoption of the regulation "is necessary to preserve, protect and perpetuate coho salmon resources in Puget Sound waters and to comply with Western Washington Federal District Court minute order signed by Judge George H. Boldt September 13, 1975." A part of the stated purpose of the regulation, appellant notes, is compliance with a federal order which flowed from the decision in

*United States v. Washington, supra* at 342–43, 403, that allocation of fish resources is necessary to preserve treaty fishing rights. Therefore, appellant contends, the purpose of the regulation is allocation, an impermissible purpose for the Department of Fisheries under the rule of *Puget Sound Gillnetters Ass'n v. Moos,* 88 Wn.2d 677, 565 P.2d 1151 (1977).

■ Appellant claims the right to exercise Puyallup tribal fishing rights, and thus to be a beneficiary of the federal court's decision in *United States v. Washington, supra,* to which the Puyallup Tribe was a party. He is therefore bound by the rule of that case, which requires allocation, and may not now collaterally attack it on the ground the State of Washington may not allocate. *See Williams v. Steamship Mut. Underwriting Ass'n,* 45 Wn.2d 209, 273 P.2d 803 (1954).

Even if appellant were not precluded from raising the argument, though, we find the regulation valid. The first stated purpose of the regulation is conservation. Expert testimony at trial established the need for the regulation in order to preserve the native coho salmon run. It applied to all fishermen, treaty and nontreaty alike, allowing salmon fishing only in specified areas in order to prevent serious harm to the natural run. Fishing regulations to be applied to treaty fishermen must be reasonable, in that they must employ conservation measures which are appropriate to their conservation purpose. *United States v. Washington, supra* at 342. *See also Hartman v. State Game Comm'n,* 85 Wn.2d 176, 179, 532 P.2d 614 (1975). Such regulations must also be necessary in that the measures employed must be essential to the interests of conservation. *Antoine v. Washington,* 420 U.S. 194, 207, 43 L. Ed. 2d 129, 95 S. Ct. 944 (1975); *United States v. Washington, supra* at 342. We find those tests are met here. The evidence of the regulation itself, and the expert testimony at trial, clearly showed that the Director of Fisheries took this action as a reasonable and necessary measure to protect the coho salmon resource. The federal court came to the same conclusion,

issuing an order which reflected and thus affirmed the state regulation. Furthermore there was absolutely no evidence at trial that the regulation served an allocation purpose, and nothing in the regulation itself states that it does. The regulation thus meets the standards of both state and federal law with regard to its conservation purpose. We conclude the Director of Fisheries did not exceed his authority in promulgating the regulation in question, and it was valid.

Appellant contends, however, that the State has the burden to prove the validity of its regulation by proof beyond a reasonable doubt, and that it did not meet this burden at appellant's trial. We do not agree that the State's burden is so great, or that it failed to establish the necessity of the regulation.

This court has held that a presumption of validity attaches to a Department of Fisheries regulation once it has been adopted under the procedure required by the administrative procedures act. *Department of Game v. Puyallup Tribe, Inc.,* 80 Wn.2d 561, 574, 497 P.2d 171 (1972), *rev'd on other grounds sub nom. Washington Game Dep't v. Puyallup Tribe,* 414 U.S. 44, 38 L. Ed. 2d 254, 94 S. Ct. 330 (1973) (*Puyallup* II). Where a prosecution for violation of a fishing regulation involves a treaty fisherman, though, the State must make a special showing. It must introduce evidence to show that the regulation was reasonable and necessary for conservation purposes. *See United States v. Washington, supra* at 342; *Department of Game v. Puyallup Tribe, Inc., supra* at 574. This special rule for establishing the validity of a state regulation which has the force of law applies only because of the unique rights of treaty fishermen to fish their usual and accustomed fishing grounds, and the unique capacity of the Department of Fisheries to establish the relevant facts regarding conservation—the sole basis upon which those rights may be restricted. The rule is a method for showing that restriction of treaty fishing rights in the individual case is in fact reasonable and necessary for conservation. Establishment of

the validity of a regulation in this manner is not, then, as appellant would have it, a part of the State's case in chief which must be proved beyond a reasonable doubt. In cases where the rule applies the State need only introduce clear and convincing evidence to show that the regulation was reasonable and necessary for conservation purposes. *See United States v. Washington, supra* at 342. The State has more than met that burden here.

The evidence introduced at trial to show the regulation was reasonable and necessary for conservation purposes included the preamble to the regulation itself, which states its conservation purpose, and the expert testimony of a fisheries biologist, Mr. A. Dennis Austin, who was the program leader for the Indian Fisheries Management Program. Mr. Austin's testimony specifically detailed the management principles and underlying facts which led to the temporary closure of the waters in which appellant fished. His testimony was unrebutted and established clearly that the conservation measure chosen, temporary closure, was appropriate to the conservation goal and necessary to protect the native coho run from serious harm. He also testified to the fact that the federal court (applying, we may infer, the standards of reasonableness and necessity for conservation which we apply here) approved the substance of the regulation 2 weeks prior to appellant's violation, and that Puyallup tribal representatives and attorneys had notice of the regulation. Under these circumstances we find the State met its burden of showing the regulation was necessary for conservation purposes by clear and convincing evidence.

The judgment is affirmed.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.